FILED

2022 Apr-11  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| CECIL INGLE, } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  6:20-cv-01649-RDP** |
| } | |
| KILOLO KIJAKAZI, } | |
| ACTING COMMISIONER OF SOCIAL } | |
| SECURITY, } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Cecil Ingle brings this action pursuant to section 405(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). *See* 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.      Proceedings Below

Plaintiff filed his application for DIB on Jun 14, 2019, alleging a disability onset date of February 2, 2019.  (Tr. 175). The Social Security Administration initially denied Plaintiff's application on July 26, 2019. (Tr. 100). On August 22, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 107). Plaintiff's request was granted, and a hearing was held on January 14, 2020. (Tr. 27). Plaintiff, his attorney, and a Vocational Expert ("VE") attended the hearing.  (Tr. 27–63). On March 9, 2020, the ALJ issued an unfavorable decision, which denied Plaintiff disability benefits. (Tr. 12–22). After the Appeals Council denied

Plaintiff's timely request for review, the ALJ's decision became final, and therefore, subject to appellate review by this court. (Tr. 1–6).

Plaintiff was fifty-four years old at the time of his alleged onset date of disability. (Tr. 91). Plaintiff received his high school diploma. (Tr. 38). Plaintiff has past work history as a plainer operator, forklift driver, metal shop employee, light hanger, and carpenter. (Tr. 40–45). Plaintiff alleges that he is disabled due to arthritis, heart conditions, and injuries sustained to his left leg, right shoulder, left femur, spine, neck, back, ankle, and heels. (Tr. 92).

During the January 14, 2020 hearing, Plaintiff testified his ability to work is primarily limited by his knees and ankles. (Tr. 46). Plaintiff explained that his previous injuries and arthritis limit his ability to balance and stand for more than forty-five minutes. (*Id.*). As a result, Plaintiff indicated that if he stands for too long his knees will buckle and give out and his pain will intensify, but his pain is treated through pain medication prescribed to him by his regular treating physician. (Tr. 47).

In addition to his knee and ankle pain, Plaintiff testified that he also suffers from pain in his hips, back, right arm, and right shoulder. (*Id.*). Plaintiff stated that the pain in his hips and back intensifies when he stands or sits for too long, but that pain is also treated with pain medication prescribed to him by his regular treating physician. (Tr. 47–49). He testified that he experiences constant pain in his right shoulder, which affects his ability to carry or lift items bigger than a milk jug with his right arm. (Tr. 49).

Finally, Plaintiff testified that in 2017 he suffered a heart attack, which caused him to be hospitalized overnight for a low heart rate only two months before the hearing. (Tr. 50). Plaintiff further testified that his heart conditions limit his ability to work because he experiences chest pains and shortness of breath when he overexerts himself. (*Id.*).

Plaintiff testified that he completes household chores like laundry, dishes, dusting, sweeping, mopping, grocery shopping, and general cleaning, and when he is not doing household chores, he is generally sitting or standing while watching TV or visiting with his son. (Tr. 51–53). Plaintiff further testified that he has not consumed alcohol in over fifteen years and the last time he used street drugs was between twelve and fifteen years ago. (Tr. 31, 54). However, Plaintiff stated he smokes half a pack of cigarettes per day.  (Tr. 54).

On August 31, 2011, Plaintiff underwent surgery on his left leg to repair injuries he sustained in a motorcycle collision. (Tr. 341). On September 19, Plaintiff was discharged. (Tr. 332–33). After his discharge, he returned for many follow-ups and had minor procedures repairing his leg. (Tr. 307–30). Each time he was found to be in no distress as he reported his pain was improving. (*Id.*). At his last follow-up appointment on February 27, 2012, Plaintiff reported that the pain in his left leg and right shoulder had improved considerably, rating the pain a two out of ten. (Tr. 307).

Between March 2012 and June 2019, Plaintiff visited his regular treating physician, Dr. Morrow, around seventy times complaining of either back, leg, or hip pain. (Tr. 423–507). Each time Plaintiff presented to Morrow Clinics he rated his pain on a scale of ten. (*Id.*). The majority of his visits Plaintiff reported that his pain would be around a four with medication and around a seven without it. (*Id.*). However, the only imagining that supported Plaintiff's claim of back pain is from February 2016, which shows a narrowing between Plaintiff's disc spaces. (Tr. 473). And, during this time, the only treatment Plaintiff received for his pain was medication. (Tr. 423–507).

On August 7, 2017, Plaintiff presented to North Mississippi Medical Center complaining of chest pain. (Tr. 350). Plaintiff received a stent in his heart to treat his Acute Coronary Syndrome and reduce his chest pain. (*Id.*). He was discharged two days later. (*Id.*).

On November 10, 2017, Plaintiff presented to Cardiology Associations of North Mississippi ("CANM") for follow-up testing on his heart. (Tr. 391). Plaintiff was found to be well "developed" and "nourished" and showed no signs of acute distress. (Tr. 393). Plaintiff was discharged with instructions to quit smoking cigarettes. (Tr. 394).

On July 18, 2018, Plaintiff returned to CANM to undergo a treadmill exercise test. (Tr. 417). This test showed no ischemia and the results were normal. (*Id.*).

On July 26, 2019, a state medical consultant, Dr. Richard Whitney, reviewed the evidence available but declined to assess any limitations, claiming there was insufficient evidence. (Tr. 91–97).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether

the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.   20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 2, 2019—the alleged onset date of his disability. (Tr. 17).  Moreover, the ALJ found that Plaintiff had the following severe impairments: left femur fracture status post closed reduction and intramedullary nail fixation, coronary artery disease status post-acute myocardial infarction and stenting, osteoarthritis of the hips, and degenerative disc disease.  (Tr. 17).

The ALJ held that Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.4 because the evidence does not show "nerve root compression, consistent limitation of motion of the spine, motor loss[,] . . . sensory or reflex loss[,] or [a] positive straight leg test." (Tr. 18). The ALJ determined that Plaintiff's osteoarthritis did not meet the requirements of Listing 1.02 because "there was no evidence of gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint with involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively." (*Id.*). Additionally, the ALJ concluded that Plaintiff's femur fracture did not meet the requirements of listing 1.06 because "there [was] no indication that a solid union is not evident   . . . and there [was] no evidence of an inability to ambulate effectively." (*Id.*). And lastly, the ALJ determined that Plaintiff's ischemic heart disease did not meet the requirements of Listing 4.04 because "there [was] no evidence of symptoms due to myocardial ischemia on a region of prescribed treatment." (*Id.*).

In evaluating Plaintiff's claim, the ALJ assessed the objective medical evidence, other evidence in the record, and Plaintiff's subjective complaints. (Tr. 18–20). However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his medical conditions are not entirely consistent with the medical evidence and other evidence on record. (Tr. 20). During the hearing the VE testified that, in her opinion, Plaintiff's ability, education, and age allow him to perform jobs in the national economy that exist in significant numbers, including positions such as industrial truck operator, assembler, packer, cook router, machine feeder, food service worker, laundry worker, marker, cashier, sales attendant, . (Tr. 70).

As a result, the ALJ determined that Plaintiff does not have an impairment or any combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 18). The ALJ determined that

Plaintiff has the RFC to perform medium work with the following limitations:

> can lift or carry 50 pounds occasionally and 25 pounds frequently. He can stand and/or walk, with normal breaks, for a total of 6 hours in an 8-hour workday, and he can sit, with normal breaks, for a total of 6 hours in an 8-hour workday. Pushing and pulling limits are the same as for lifting and carrying. [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can frequently balance and occasionally stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the right upper extremities, and he can frequently handle and finger bilaterally. He should avoid concentrated exposure to vibrations and should avoid all exposure to hazards such as moving, underground machinery and unprotected heights.

(Tr. 18–19). And based upon the record evidence, and because of Plaintiff's age, education, work

experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform, and therefore, has not been under a disability as

defined in the Act since February 2, 2019. (Tr. 21–22).

## III.     Plaintiff's Argument for Remand or Reversal

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination.

(Doc. #14 at 6). Plaintiff also argues that the ALJ erred in failing to fairly and fully develop the

record. (Doc. #14 at 10).

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to

sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847

F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42

U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by

"substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The threshold for what constitutes substantial evidence "is not high." *Biestek v.* Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

After careful review, the court concludes that the ALJ did not err in his findings or conclusions.

### A.     Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff contends that substantial evidence does not support the ALJ's RFC finding because there is no medical opinion in the record that supports the ALJ's determination. (Doc. #14 at 33). This court disagrees.

When evaluating a claim, the ALJ must assess the claimant's RFC at step four of his analysis. *See Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment of a claimant's ability to work despite his impairment that is based on all relevant

medical evidence and other evidence on the record. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The claimant bears the burden of producing medical evidence demonstrating an impairment and how severe the impairment is during the relevant time period. *See* 20 C.F.R. § 404.1512(c). And, although a claimant *may* provide a physician's opinion of his remaining capabilities, the ultimate determination of disability is reserved for the ALJ. 20 C.F.R §§ 404.1513, 404.1527, 404.1545; *see also Cooper v. Astrue*, 373 F. App'x 962, 962 (11th Cir. 2010) ("The task of determining a [plaintiff's] ability to work is within the province of the ALJ, not a doctor.").

Here, the ALJ's RFC finding is supported by substantial evidence despite there being no medical opinion related to Plaintiff's ability to work with his impairments. In making his determination, the ALJ evaluated the objective medical evidence, other record evidence, and Plaintiff's subjective testimony. Specifically, the ALJ considered Plaintiff's adult function report, Plaintiff's testimony as to his abilities and daily activities, and the medical and other record evidence, including the treatment notes about Plaintiff's motorcycle collision, heart condition, and back/lumbar pain. (Tr. 19–20).

The ALJ noted that although Plaintiff contends he has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, remembering things, completing tasks, concentrating, and using his hands, he is able to clean his house, groom himself, drive, prepare microwavable meals, grocery shop, visit family, and make small repairs. (Tr. 19). As the ALJ also correctly noted, Plaintiff's medical records contain notes of lumbar pain, but there was no documentation of any decrease in muscle strength or motor function. (Tr. 20). Finally, the ALJ found no evidence of cardiac symptoms or treatment during the relevant time period. (*Id.*). As a result, the ALJ concluded Plaintiff's RFC is supported by a lack of

evidence indicating a loss of motor strength or function or cardiac symptoms that would reduce his exertional capacity below a medium level. (*Id.*).

This court concludes that the substantial evidence supports the ALJ's RFC finding.

**B.      The ALJ Did Not Err in Failing to Fully and Fairly Develop the Record**

Plaintiff next argues the ALJ erred in failing to fully and fairly develop the record by not ordering a consultive medical opinion. (Doc. #14 at 10). This argument misses the mark.

 "[A] hearing before an ALJ is not an adversary proceeding," and "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). But, the ALJ only has a duty to develop the record where appropriate and "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) ("[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment."). That being said, Plaintiff's burden to prove that he is disabled is not relieved by the ALJ's duty to develop the record, and as a result, Plaintiff remains responsible for producing evidence to support his claim. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. § 404.1512.

As discussed above, the record contains sufficient evidence supporting the ALJ's RFC determination that Plaintiff's medical records do not contain evidence of treatment for his heart condition, there is insufficient evidence of loss of muscle strength or motor function, and that Plaintiff's daily activities indicate he can perform the jobs at issue. In assessing Plaintiff's RFC, the ALJ properly carried out the role of an adjudicator. *See* 20 C.F.R. § 404.1545(a)(3) ("We will

assess your residual functional capacity based on all of the relevant medical and other evidence."). Moreover, the ALJ did not substitute his opinion for that of a medical provider when assessing Plaintiff's medical records and other evidence because the lack of treatment for Plaintiff's heart condition and lack of evidence indicating loss of muscle strength or motor function does not need review by a medical expert. Accordingly, the ALJ did not err in failing to obtain a consultative medical examination as there was more than sufficient evidence for the ALJ to make an informed RFC finding without a physician's assessment.

This court concludes the ALJ fulfilled his duty to develop a full and fair record.

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is, therefore, due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this April 11, 2022.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE